BOARD OF TRUSTEES OF UNIVERSITY OF MISSISSIPPI *v.* GOTTEN.

[80 South. 322, Division B.]

1. EASEMENTS. *Way by prescription.*
   Although an easement cannot be maintained by the public by adverse user, unless the public as such had exercised the right in the regular way, through the lawfully constituted authorities, yet an individual may acquire an easement of way by adverse user, though at the same time the public used the way.

2. EASEMENTS. *Ways. Erection of gates.*
   Where the erection of gates across a right of way will not unreasonably interfere with the enjoyment of the easement, the owner of the servient estate is justified in erecting, such gates.

APPEAL from the chancery court of LaFayette county. HON. J. G. McGOWEN, Chancellor.

Suit by Monroe Gotten against the board of trustees of the University of Mississippi. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*Earle N. Floyd,* Assistant Attorney-General, for appellant.

In discussing the legal principles applicable to this case, I will state that the *Mastronardi case,* 76 Miss.

273, as shown by the syllabus, lays down the following rule governing easements: ''A right of way over land is not ripened by prescription unless the easement be claimed under color of right and be so exercised as to render the claimant liable to an action of trespass in the absence of such right.''

In this case Judge Terrell lays down the rule as follows: ''As a title to land is gained by ten years' actual, adverse possession, the use of a right of way over land for a like period exercised adversely anu under color of right, would constitute a good title by prescription to such way. The use of the way over land, in order to ripen into a title by prescription, must be under color of right, and the privilege exercised must be such as to expose the party asserting such right-of-way to an action if he wrongfully exercised such right. Washburg on Easements (4 Ed.), 152-53, 27, 28; *Lanier* v. *Booth,* 50 Miss. 410.

We do not regard the traveling public as asserting such privileges in this case. Surely they had no intention of inviting Cameron to sue them and, indeed, it is difficult to see how he could have maintained an action against them collectively or distributively.''

From an examination of this case, the court will see that the traveling public in the Mastronardi case were doing exactly what the traveling public were doing in this case, that is, in order to avoid rough and impassable places in the main highway, they were accustomed to make a detour around such bad road and the court held that this kind of use was only permissive in its nature and used by each traveller as a matter of necessity only, and that such use, however long continued, could not ripen into an easement because the privilege exercised must be such as to expose the party asserting such right of way in an action if he wrongfully exercised such right. This case has never been overruled but still stands as the law of this state. The Mastronardi case was again referred to and re-affirmed in the case of

*Burnley* v. *Mullins,* 86 Miss. 441; also in the case of *Wills* v. *Reed,* 86 Miss. 446, et seq.

On this point, I invite the attention of the court to the case of *Shulenberger* v. *Johnston, et al.,* 35 L. R. A. (N. S.), 941, and note. In the first and second syllabi, we find the following: "There can be no private way of necessity over the lands of a stranger." "A private right of way cannot be secured by prescription over uninclosed land." The facts in that case are very similar to the facts in the case now before the court. This point is so well covered in *Healy Lbr. Co.* v. *Morris,* 33 Wash. 490, 63 L. R. A. 820; 99 Am. St. Rep. 964; 74 Pac. 681; that we shall not pursue it further. See also *Nalsch* v. *Waggoner,* 62 Wash. 470, 114 Pac. 446.

We understand the rule to be that a hostile or adverse intent must mark the inception of the use upon which the title is made to depend, or, if the original use be permissive, a changed intent on the part of the user, or the mere lapse of time, although the term of the original permission is agreed upon, will not initiate or ripen a title. Such is the logic of the case of *Scheller* v. *Pierce Co.,* 55 Wash. 298, 104 Pac. 277. The court, adopting Jones on Easements, secs. 282, 284, as an accurate statement of the law, and quoting from *Pitman* v. *Boyce,* 111 Mo. 387, 33 Am. St. Rep. 536, 19 S. W. 1104, says as follows: "If permissive in its inception, then such permissive character being stamped on the use at the outset will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character." *State* v. *Horlacher,* 16 Wash. 325, 47 Pac. 748; *Watson* v. *Adams Co.,* 38 Wash. 662, 80 Pac. 201.

"The whole theory of prescription depends upon the presumption of a grant, and if the circumstances are

such as to indicate that the pathway had been enjoyed as a mere privilege, no presumption of a grant arises.'' *Brown* v. *L. & N. R. R. Co.,* 97 Ky. 236; *Thornton* v. *L. & N. R. Co.,* 19 Ky. L. Rep. 96; *Thompson* v. *L. & N. R. Co.,* 110 Ky. 975; *McLeary* v. *Boston M. R. Co.,* 153 Mass. 300, 11 L. R. A. 359; *Barber* v. *Bailey,* 84 A. T. L. 608; *Plimpton* v. *Converse,* 42 Vt. 712; *Mitchell* v. *Walker,* 16 Am. D. C. 710; *Lathrop* v. *Levarn,* 93 Vt. 1.; *Goodall* v. *Drew,* 85 Vt. 408; *Anderson* v. *Dyer,* 107 Me.—; *Bigelow Carpet Co.* v. *Wiggins,* 209 Mass. 542; *Williams* v. *Kuykendall,* 151 S. W. 629; *Austin* v. *Bailey,* 37 Vt. 219; 14 Cyc. 1156 and 1157; *Rothschild* v. *Hatch,* 54 Miss. 554; *Davis* v. *Bowman,* 55 Miss. 671; *Alexander* v. *Polk,* 39 Miss. 737; *Huntingdon* v. *Allen,* 44 Miss. 654.

.A great many other authorities could be cited to sustain the foregoing proposition, but we do not think that these principles will be seriously contradicted or denied by any one. The rule is laid down in Ruling Case Law, vol. 9, 776, under the head of ''Easements.'' 1 R. C. L., page 735; 27 Am. Dec. 569; 48 Am. Rep. 24; 1 A. S. R. 840; 14 A. S. R. 278; 76 A. S. R. 479; 87 A. S. R. 775; 18 L. R. A. 146; 26 L. R. A. 451; 52 Am. Rep. 303; 98 A. S. R. 133; 36 L. R. A. (N. S.) 1056; 76 A. S. R. 834, and others cited thereunder; *Warren Co.* v. *Lamkin,* 93 Miss. 164.

In the case of *Bay St. Louis* v. *Hancock Co.,* 80 Miss. 364, the rule here contended for, as held by the court, is tersely summed up in the syllabus. *Ralston* v. *Weston,* 46 W. Va. 544; *Snyder* v. *Hutchinson,* 76 Am. St. Rep. 494; *Vicksburg* v. *Marshall,* 59 Miss. 563; Dillion, Mun. Corps., 675; *Indianola* v. *Montgomery,* 85 Miss. 304; *Briel* v. *Natchez,* 48 Miss. 423.

Thus it has been held that title by adverse possession cannot be acquired in land which has been dedicated to the use of the public for the purpose of a street, alley, public square, or park, or public dock, engine lot, schoolhouse site, etc. It has however, been held that in order to bring such land within the rule, the dedication

must have been accepted." 1 Cyc. 118. See also authorities cited.' *Waive* v. *Krouse,* 26 L. R. A. 449; *Brown* v. *Trustees,* 224 Ill. 184, 8 Ann. Cases, 96; *Moose* v. *Carson,* 7 L. R. A. 550; *Hoadley* v. *San Francisco,* 50 Cal. 265; *People* v. *Pope,* 53 Cal. 437 and notes; *Eastern State Hospital* v. *Winston,* 3 L. R. A. 746; *Maia* v. *Eastern State Hospital,* 97 Va. 507, 47 L. R. A. 577; *Light Co.* v. *Montgomery,* 85 Miss 312.

I think that I have shown that title by prescription has not been proven and could not be maintained by the complainant upon the facts of this case, even if he sought to acquire the right-of-way over the private lands of a private citizen. Certainly, he cannot be held to recover or be entitled to hold a right-of-way across the lands of the University, which were devoted to, and have been used continuously for University purposes. 1 Wend. 487. If, by any means, we are mistaken in the foregoing views and the court should be of the opinion that the complainant is entitled to a right-of-way across the University lands, then we submit that under the great weight of authority, the complainant would not be entitled to prevent the University from erecting gates across such right of way. On this point, I refer the court to the case of *Luster* v. *Garner,* 128 Tenn. 160, Ann. Cases, 1914 D, 769.

In conclusion, I desire to say that the overwhelming weight of authority established the principles we have contended for, and that the evidence in the case amply shows that the complainant has not acquired any right of easement over the University land, but the evidence has established, beyond any doubt, that the complainant is not entitled to any relief prayed for, for be it noted here that the University did not seek to fence up the right of way, but was attempting only to erect a gate across it, and the proof amply shows that complainant would have been entitled to go through the property as the University did not object to his doing so.

*Edgar Webster,* for appellee.

Counsel for appellant, in his brief, relies on the *Mastronardi case* in 76 Miss., the *Burnley case* in 86 Miss., page 441, and the *Willis case* in 86 Miss., page 446, to sustain his position that not enough testimony was introduced to the lower court to show adverse use by Gotten and his predecessors in title to this mail box route. The Burnley case and the Willis case are bottomed on the Mastronardi case, which case has been analyzed in my printed brief.

But there is one other pertinent and all controlling distinction between these three cases and the one at bar. In all of these cases, the party claiming an easement did so because he, as a member of the "indiscriminate public" and as one of the public, had likewise travelled over the right of way or the neighborhood road. Gotten claims an easement, not because he is a member of the indiscriminate public, but for reasons which the general public did not have. The public travelled over the mail box route because it was better and nearer; Gotten and his predecessors travelled this way because it was their only way to the city of Oxford, because it was their only egress and ingress.

In Ruling Case Law, page 773, it is held: "The general public, considered apart from legally organized or political entities, being incapable of receiving a grant, cannot acquire a prescriptive right to an easement."

That is why it takes more proof to establish a prescriptive easement when it is simply claimed on behalf of the general public than when it is claimed on behalf of a single individual, acting in his own personal capacity. For the fiction of a lost grant is applicable to a single person because there is some one to take the grant and some one who can be the grantee.

Bearing this in mind, it is easy to distinguish the three cases above set out, from the case at bar, and

the supreme court, impressed that distinction in the Burnley case, at page 445, when Judge TRULY said: "It must be noted in this connection that we are not dealing exclusively with a personal easement, such as may, under certain circumstances, be acquired by prescription. Our remarks are intended to apply to the case made by this record, and we decide only that under the facts of the record no sufficient title has been shown in the public, either by official assertion of claim, by order or action of the board of supervisors, by adverse possession or prescription to prevent the appellants from lawfully closing the private road."

The main defense in the lower court was that this route of travel had shifted from time to time and because of such shifting or changing of this route, an easement had not been acquired on any particular line of travel. To meet that defense, we attempted to show, and we think the evidence overwhelmingly shows, that not only did the owners of the Stockard land travel this mail box route, but that the general public travelled it likewise. The proof on this point was not introduced to show that as a basis for an easement the general public had acquired an easement across this north half of section 29; but that Gotten and his predecessors in title, together with the general public, had followed one line of travel, to wit—the mail box route, and no other.

All that is required of one who seeks an easement is to show that he has travelled one general line of right-of-way. The mere shifting, because of mud holes or other natural causes, of a line of travel, will not alone defeat an easement. *Kurtz* v. *Hoke,* 33 Atl. (Penn.) 549; *Cheney* v. *O'Brien,* 10 Pac., (Cal.) 479.

Regardless of whether a piece of property is fenced or unfenced, twenty years' travel over that property, is presumed to be adverse and under color of right, in the absence of evidence showing permissive use.

COOK, P. J., delivered the opinion of the court.

Without going into the detailed pleadings in this case, suffice it to say that the complainant below, appellee here, filed his bill of complaint praying that the board of trustees of the university be enjoined from erecting a gate across a certain road leading from his homestead to a certain public road, which public road afforded the only means by which complainant could reach his market and the outside world. The board of trustees answered, denying the allegations of the bill of complaint and making their answer a cross-bill; prayed that the complainant be enjoined from interfering with the erection of the gate across the alleged road. Proof was taken by both sides, the chancellor reached the conclusion that the complainant was entitled to the relief sought, and enjoined the board of trustees from erecting the aforesaid gate across the roadway, and dismissed the cross-bill. The evidence taken as a whole was, we think, sufficient to warrant the finding that complainant and his predecessors in title had an easement over the land belonging to the university.

It appears that James Stockard was the original owner of the land now owned by the complainant, and also the owner of the land now owned by the university. The homestead of Mr. Stockard was situated upon the land now owned by complainant. In 1841 Mr. Stockard conveyed, or attempted to convey, to the university the land over which complainant claims an easement. From 1841 and subsequent to this date Mr. Stockard and his successors in title to the Stockard homestead have used the roadway from the homestead to the public road.

It sufficiently appears that the roadway was openly and adversely used as a matter of right, and this easement has never been challenged until the institution of this suit. It also appears that the general public residing in this neighborhood used the road in the same way.

The brief of the attorney general on behalf of the board of trustees relies upon *Warren County* v. *Mastronardi,* 76 Miss. 273, 24 So. 199; *Burnley* v. *Mullins,* 86 Miss. 441, 38 So. 635; *Wills* v. *Reed,* 86 Miss. 446, 38 So. 793. An examination of these cases will disclose that the easements asserted therein were all based upon the rights of the public alone. These cases, in so far as they hold that an easement cannot be maintained by the public by adverse user, unless the public as such had exercised the right in the regular way, through the lawfully constituted authorities, are entirely sound.

In the instant case the complainant is not claiming as a member of the "indiscriminate public." The fact that the public did use the roadway does not affect the easement of Gotten.

The chancellor heard all the evidence, and reached the conclusion that Mr. Gotten was entitled to an easement over the servient estate of the university, without regard to the rights of the general public therein, and we do not believe that this court would be justified in overruling the findings of fact by the chancellor. Indeed, there seems to be no doubt that this right of way was established long before the university obtained title to the lands now owned by it; that the land was taken by the university with full knowledge of the established roadway, and the easement was recognized until this litigation was begun.

There is another question yet to answer. Conceding the easement, can we say that the erection and maintenance of the gate across the roadway appreciably interfered with, or unreasonably limited, the enjoyment of the easement?

When this controversy arose the proctor of the university had charge of the erection of the fence inclosing the university land. The proposed fence crossed the roadway over which Mr. Gotten claimed the right to pass. The plans of the proctor contemplated the erection of a gate across the roadway, and this was the

*casus belli.* The proctor agreed that Mrs. Gotten could be furnished with a key to the gate; the gate was to be kept locked, and Mrs. Gotten would be held responsible for locking the gate when any of Gotten's people passed through the gate.

Upon this phase of this case the authorities are not in harmony, but we believe that the facts of each case should control. If it appears that the erection of gates will not unreasonably interfere with the enjoyment of the easement, it is our opinion that the owner of the servient estate is justified in erecting gates. Generally speaking, every owner of lands has a perfect right to fence them, provided, of course, to do so will not appreciably interfere with vested rights of others.

In this case we hold that the complainant had a vested right of passage, but after a very painstaking investigation and comparison of the authorities, when we apply the law to the facts, we are forced to the conclusion that Mr. Gotten's rights were not unreasonably curtailed by the proper erection of the gate. *Luster* v. *Garner,* 128 Tenn. 160, 159 S. W. 604, 48 L. R. A. (N. S.) 87, Ann. Cas. 1914D, 769. We quote with approval from the notes to *Luster* v. *Garner* (Ann. Cas. 1914D, 769) *supra*:

"In the case before us there was no evidence that the gate, erected by the defendant was a practical hindrance, nor that it was, under the circumstances, an unreasonable obstruction to the plaintiff's use of the right of way across the defendant's uninclosed field. There is some evidence on the part of the plaintiff that it was an inconvenience to open the gate, but his explanation shows that it was only the usual and necessary inconvenience which was caused by descending from his wagon, opening the gate, driving through it, and closing it again. This we think, under all the authorities, cannot be considered in any sense as an unreasonable obstruction nor a hindrance to the free use of the way by the owner of the easement. The court below was there·

fore correct in that part of the charge to the jury which is complained of; and, as this is the only assignment of error, the judgment is affirmed.''

The notes to *Kohler* v. *Smith,* 3 Pa. Super. Ct. 176, meet with our approval, and announce a rule which gives full effect and preserves the rights of the parties to this appeal.

The right to pass was accorded to Mr. Gotten by Mr. Ross, the proctor, and the trivial labor and trouble incident to the opening and closing of the gate did not in any way interfere with a full enjoyment of the easement.

So we think the decree should be modified so as to confirm the right of passage, and to affirm the right of the university to fence and maintain the gate upon the terms proposed by Mr. Ross.

*Reversed, and judgment here.*