379 So.2d 520 (1980)
Mary BOGGS
v.
Janice EATON et al.
No. 51592.
Supreme Court of Mississippi.
January 9, 1980.
Rehearing Denied February 20, 1980.
*521 Robert O. Homes, Jr., Metairie, for appellant.
Eaton, Cottrell, Galloway & Lang, W. Joel Blass, James B. Galloway, Mize, Thompson & Blass, Gulfport, for appellees.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Mary Boggs brought suit in the Chancery Court of Harrison County, Honorable Frank W. Alexander, presiding, against Janice Eaton individually, and as administratrix of the estate of Fred and Charlotte Schustedt, seeking to remove clouds from her easement title, and to enjoin defendants from interference with her rights under the easement, and damages for such interference with her easement rights. The chancellor denied the relief prayed for, dismissed the bill of complaint and entered judgment for the defendants and Mary Boggs appeals.

I.
Did the chancellor err in dismissing the bill of complaint when the proof showed as a matter of law that appellant had valid title to the easement and appellees committed a trespass against her rights under said easement?
In the year 1908 Archibald Boggs and Edwin B. Lang were neighbors and adjacent property owners on the Mississippi Gulf Coast. A water well was drilled on the Lang property and, on March 24, 1908, Lang and Boggs entered into a written agreement whereby Lang, who owned the property on which the well was situated, granted an easement to Boggs and his assigns, which provided for a two-inch water pipe running from the well to the home of Boggs for the purpose of furnishing water to his property. The significant parts of the easement follow:
"That [Lang] for and in consideration of the sum of $100.00 * * * hereby * * * grants and conveys unto [Archibald Boggs], his representatives and assigns, the right to use and consume water from the artesian well * * * in the manner hereinafter described * * *.
The said [Boggs] shall have the right to use water from said well in any quantity he may desire or be able to obtain, so long as said well shall last, by means of the one pipe now connecting said well with premises of said Boggs, as hereinafter described, his said use of said water above granted to be only on the following described property, to-wit: The property owned by the said Boggs and described as being a lot of land facing on the Gulf of Mexico and bounded on the East by the property of ____ Boggs, on the West by the property of the grantor herein, on the South by the Gulf of Mexico and on the north by the L. & N.R.R.

*522 It is further agreed and understood that the rights granted to the said Boggs to use said water shall be confined to his own use and that of his assigns on the property above described, and shall not apply to any party or parties to whom he may hereafter sell lots or to any lots so sold out of the property * * * but it shall only be used by him and his assigns on said plot of ground or premises above described so long as they are kept intact, or such part of said premises as he may retain as curtilage of the house which he now occupies, and for that place only."
Tragedy struck the Boggs and Schustedt families. Archibald Boggs and Bessie Boggs, his wife, died as a result of the 1947 hurricane on the Mississippi Gulf Coast. His devisee, Mary Boggs, appellant herein, acquired the Archibald Boggs property under his last will and testament and she has owned the property since 1947. The Lang property was acquired subsequent to 1948 by a Mr. and Mrs. Fred Schustedt, who lost their lives as a result of Hurricane Camille on or about August 17, 1969.
The house of Archibald Boggs was destroyed by the 1947 hurricane, but the water line from the Lang well was not affected by the hurricane and the water usage was not interrupted. A garage adjacent to the Boggs home was rebuilt as a residence and was occupied by appellant and her brother for approximately one (1) year and then by appellant's tenants. That building, for all practical purposes, was destroyed by Hurricane Camille in 1969.
Subsequent to Hurricane Camille, the Corps of Engineers went upon the Schustedt property with heavy equipment for the purpose of cleaning up the area, and crossed the water line, which resulted in breaking and damaging the pipe. For the first time the water flow from the well was interrupted. Appellant employed a plumbing contractor, Harold Bowser, to replace the old line, or parts of it, with another two-inch pipe, completing the work in February, 1971. The cost of the repair work amounted to eight hundred fifty dollars ($850.00). After installation of the new pipe, appellees removed a section of same which cut off the water flow to the Boggs' property. Prior to Hurricane Camille, the water usage had been continuous and uninterrupted, except that on occasions Mr. Schustedt would lower the pressure in the pipe. At such times, appellant, or her tenant, contacted Mr. Schustedt and persuaded him to resume the water pressure. Appellant resided in a house she had built, in place of the old Boggs home, approximately three hundred (300) feet north of the reconstructed garage but on the same Boggs property. At the time of trial, appellant was receiving water service from the City of Long Beach Water Lines.
Appellees contend that, unless the chancellor is manifestly wrong in his decision, this Court must affirm. The chancellor made no finding of fact, nor did he express his reasons for denying the relief sought. The principle of "manifest error" applies only to a factual situation. If the chancellor is manifestly wrong in basing his decision upon the facts, then this Court will reverse, otherwise, we will affirm. This rule does not apply on questions of law.
There is no dispute in the facts of this case. The parties entered into a lengthy stipulation and, when the appellant rested her case, the appellees also rested without adducing evidence. The question presented here involves the interpretation and construction of the written easement dated March 24, 1908, between the original parties, Archibald Boggs and Edwin Lang. All provisions must be given effect, if such reasonably can be done. In ascertaining the intention of the parties from the language of the instrument, the grant or reservation should be so construed as to carry out that intention, and, in case of ambiguity or doubt, a grant or reservation of an easement ordinarily will be construed in favor of the grantee. 25 Am.Jur.2d Easements and Licenses § 23, at 435 (1966); 28 C.J.S. Easements § 29, at 685-686 (1941); Ouber v. Campbell, 202 So.2d 638 (Miss. 1967).
The first paragraph conveys the easement to Archibald Boggs, his representatives *523 and assigns, viz, the right to use and consume water from the artesian well on Lang's property. The argument of appellees that "assigns" does not cover appellant, who took the property under the last will and testament of Boggs is without merit. The general definition of "Assigns" is stated in 23 Am.Jur.2d Deeds § 219, at 263 (1965):
"In deed construction, the term `assign' or `assignee' denotes in law one to whom an assignment has been made, and comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law."
Paragraph 2 of the instrument grants the right to use water from the well in any quantity Boggs may desire, or be able to obtain, so long as the well shall last, by means of the one pipe connecting the well with the premises of Boggs. Appellees argue that the parties to the instrument intended that no pipe other than the original pipe should conduct water, and, since that pipe either had deteriorated or had been removed through repair, the rights of the grantees under the instrument were extinguished. We are of the opinion that such argument is not a reasonable interpretation of the provisions of the paragraph. If Hurricane Camille had occurred on the 30th day of March, 1908, and the pipe had been damaged by heavy equipment in cleaning up the debris, probably there would have been no argument about the right to repair said line. We think that a reasonable interpretation of said provisions is that it was the intention of the parties that Boggs be authorized to repair the pipe and line through the years as they required such repair. We also think that the clause in Paragraph 2 limited the grantee to the size of the pipe and the number of pipes (1) running from the well in order not to deplete the water in the well or reduce pressure of the water.
Appellant sold a parcel of the Boggs property and appellees next contend that such sale and conveyance of a part of the original property described in the easement instrument cancelled the easement. We construe Paragraph 3 to mean that the right to use water, granted in the instrument, was limited to Boggs, and his assigns on the original premises contained in the March 24, 1908 instrument, less any lot or parcel which may thereafter have been conveyed from the original premises. The argument of appellees to the effect that since the original Boggs house was destroyed, the curtilage around it ceased to exist and the present house three hundred (300) feet from the original Boggs house was not entitled to receive water from the well and line, is without merit. Curtilage may extend to outhouses, gardens, and property used for the enjoyment of the home place, and may even be large enough for cattle to graze upon. 25 C.J.S. Curtilage, at 82 (1966); Collier v. King, 251 Miss. 607, 170 So.2d 632 (1965). We construe the intention of the parties in Paragraph 3 was to grant Boggs the right to use water on the original premises, less and except those parts or parcels conveyed away from same.
We hold that the chancellor erred in his interpretation of the easement instrument, and in applying the law to same, and we reverse the judgment of the lower court and enter judgment here validating her right to the enjoyment of the water easement, and enjoining and restraining appellees from interfering with the due exercise of those rights under said easement. Insofar as appellees' property is concerned, the easement is established along the original pipeline to the boundary of appellant's property.

II.  III.
Did the chancellor err in refusing to admit the testimony of Harold Bowser, master plumber, as an expert in the field of plumbing with respect to damages?
Did the chancellor err on the question of damages?
Mr. Harold Bowser was offered by the appellant as an expert in the field of plumbing. The chancellor declined to admit his testimony as an expert, although practically *524 all of it appears in the record. Bowser has been a master plumber for approximately twenty (20) years, during World War II he studied courses taught by the U.S. Air Force at Keesler Air Force Base, he was issued a license by the City of Pass Christian after passing an examination for master plumbers, and he has a considerable amount of experience in the field. Although the question of qualification of an expert is for the court, we are of the opinion that Mr. Bowser did so qualify and that his expert testimony should have been admitted. Ludlow Corp. v. Arkwright-Boston Manufacturers Mutual Ins. Co., 317 So.2d 47 (Miss. 1975); Capital Transport Co. v. Sigrest, 254 Miss. 168, 181 So.2d 111 (1965); Mississippi Power and Light Co. v. Walters, 248 Miss. 206, 158 So. 2 (1963).
We have considered the evidence carefully with reference to the question of damages. The record does not indicate the condition of the entire line extending across the Schustedt property. In oral argument, counsel for the appellant acknowledged that his client has no idea of what would be required to repair and reopen the line. We are of the opinion that the facts of this case do not justify damages, either actual or punitive.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.