IRVING, P.J.,
for the Court:
¶ 1. This appeal arises out of a land dispute between Martha J. Stancil and James Terry Farris, who own adjacent properties in Itawamba County, Mississippi. Farris had previously been granted an easement to pass over a portion of Stan-cil’s property; in 2008, Stancil filed a complaint alleging that Farris had abandoned the easement. Farris filed an answer and counter-complaint, wherein he alleged that he had not abandoned the easement and that he owned a small portion of Stancil’s property due to adverse possession. In November 2009, the Itawamba County Chancery Court held a hearing regarding the easement and Farris’s adverse-possession claim. The chancellor ruled that the easement had not been abandoned and found that Farris had successfully established his claim of adverse possession. Feeling aggrieved at the chancellor’s judgment, Stancil appeals and asserts that the easement was abandoned and that Farris failed to present sufficient evidence to support a finding of adverse possession.
¶2. Finding no error, we affirm the judgment of the chancery court.
FACTS
¶ 3. Farris has owned the property at issue in this case since 1997. In 2003, the property that Stancil currently owns was owned by her mother, Sybil Prestage Wilburn. In 2003, Wilburn granted a ten-foot easement to Farris so that he could access the southern portion of his property.
¶ 4. In 2008, Stancil and her family members erected yellow metal posts at the end of the easement and constructed a new fence along the easement. Part of this fence was placed along a piece of property referred to throughout the record as the triangular piece of property. Stancil’s son, Destry Stancil, testified that he built the posts and that he placed them over ten feet apart. At trial, Farris testified that the posts prevented him from fully using his easement, as the posts were too close together for him to get all of his equipment through them. Farris also disagreed with the placement of portions of the new fence. There is no question that relations between Stancil and Farris became increasingly inimical after the placement of the metal posts and the new fence.
¶ 5. As a result, in November 2008, Stan-cil filed a motion in the chancery court, alleging that Farris had abandoned his easement and that it should be rescinded. Farris filed an answer and counterclaim, wherein he denied abandonment of the easement and asserted ownership by adverse possession of the triangular piece of Stancil’s property.
¶ 6. At trial, Stancil, Destry, and Allen Stancil, Stancil’s ex-husband, all testified on Stancil’s behalf. They testified that they had never observed Farris using his easement. Stancil testified that the easement was only granted in 2003 because of flooding that prevented Farris from traversing through to the southern portion of his property. Stancil indicated that the flooding has since been resolved by improvements to her property. Destry, who lives near the easement and the disputed land, testified that he has never seen Far- *819 ris use the easement. By contrast, Farris testified that he uses the easement several times a year to access his property. Randy Phillip Boyd, a registered professional land surveyor and registered forester, was hired by Stancil to conduct a survey on the property line that separated Stancil’s property from Farris’s. His survey was admitted into evidence as exhibit 4. He testified that the new fence erected by Stancil was essentially in the same location as an old fence “except for a portion along the south right-of-way of Thrasher Road. The old fence turned about forty feet before reaching the right-of-way.”
¶ 7. Regarding the triangular property, Destry testified that he regularly mowed and maintained the property and that Far-ris never did anything to care for the property. Farris and his father, Terry, both testified that Farris regularly uses the easement to access the southern portion of his pi’operty. Farris testified that he bush-hogs the triangular piece of property every year or so and has always considered that land to be part of his property. Farris stated that he purchased his property from Dr. Tom McDonald, who walked the metes and bounds of the property with him in 1997 and indicated that the triangular piece of property was part of Farris’s land. Terry stated that he has lived in the area for many years and that the triangular piece of property has always been understood to be part of the land that Farris currently owns, which was known for many years as the Thrasher place.
¶ 8. In addition to entering a written order, the chancellor provided extensive findings from the bench, which we find helpful to quote:
This matter is before the Court on two basic issues that were submitted to me this morning, or this afternoon really, really just before lunch, and the issue of whether or not the easement has been abandoned as noted here and the issue of the triangle, for lack of a better description .... The Court will accordingly refer to those as such.
I’ll deal with the matter of the easement first.
[[Image here]]
The Court has heard the testimony of the parties here today, including, first of all, findings of fact, Mr. Boyd, who testified that the easement about where it was running and what the south right-of-way line of Thrasher Road encompassed and so forth. He testified basically that the new fence was built essentially on the line as established by this Court’s decree earlier even though it varied hither and yond a few feet back and forth.
The next testimony was that of Ms. Stancil. Basically, her testimony was essentially that there never was — never a line between them and the Thrashers basically established as far as the triangle was concerned.... No condition attached to the easement as to the pond. This Court observed from her testimony here that I could find she testified about — she testified, of course, that the easement runs east of the fence line on the Stancil property through a point at the end of the triangle — I mean, a tree at the point of a triangle on cross-examination was sought to be established by [Farris’s attorney]. There were two sets of posts that had been set up by the Stancils as noted in succeeding testimony. She stated that she has a deed to the triangle. I have no evidence per se of the establishment of that line as such before me. Since 1997, basically the testimony was that on cross-examination, that Mr. Farris had owned what was known as the Old Thrasher place. On redirect examination, she indicated the crux of it, as I see it, and she said *820 the red line and the triangle area — the southern red line in the triangle area, “the husband built an old fence on it in the 70s, I think,” as to the time at least. They put another fence on the north line of the triangle. And testimony was that she “thought the land was ours.”
Mr. Allen Stancil then testified. He’s the ex-husband of Ms. Stancil, the Plaintiff in this case. He testified among other things that they had cut pine trees along the triangle area for Ms. Thrasher to observe so she could see down the road. He put back up the fence on the south line of the triangle in 85 or so, as he indicated. He stated that he had bushhogged it but not since the 1980s. He stated that he maintained the land in the triangle to the left. He’s been around the property since 1975 and he testified he used to ride on the Farris property, used to be a road back into his property. Moved the fence — this was on cross-examination, somewhere around the late 70s. He built the south line of the fence in the mid 70s or 80s. Exhibit 14 indicated that he put the [new] fence up last summer. This fence was moved 61 feet to the 200-foot triangle northerly....
Mr. Destry Stancil, who lived on the property off and on since 1990, moved around 2006, two and a [half] years ago. He and his dad put up the new fence on the road. Never saw Farris do anything to maintain the triangle, nor McDonald, Dr. McDonald who never claimed the triangle, he claimed.... He contended that Mr. Farris had another way to get back to Farris’[s] land but there was no water to interfere now.... Farris owns this property so he could have access. The posts actually were put there by them to interfere, I think, with that access. But in any event, they erected these posts on or about June of 2008. The defense came forth with J.T. Farris, the father of the Defendant, Counter-Plaintiff in this case. He has been a supervisor for some 12 years in this area. He was familiar with the property, familiar with the area. He said Terry kept the triangle area bulldozed. It was — Terry bought it in October, I believe, of 97. He treated it as a part of the yard for the Thrasher place. He understood it to be so. He saw Terry maintain the triangle. He saw nobody else maintain the triangle. He lived in the area some 40 years and he noted, of course, ... the yellow posts on the east side of the easement on the north end and the yellow posts on the west side of the easement on the south end. The posts were put parallel. People lived for 30 years, used this as a yard, he testified. That’s the triangle.
[[Image here]]
Moving on to the rest of this testimony, we get down to the basic point here of the fact that the old fence line on the south end of the triangle [sic]. That line intersects at the old pine tree from the north — toward the northwest, the fence going in that direction. This was Mr. Terry Farris himself. The posts that were erected by the Stancils stopped him from mowing some two and a half years ago. There was the issues [sic] of the light pole and their insisting that it be moved by the electric power company. They moved the fence back 41 [sic] feet. That is the new fence they constructed on the south line of the triangle and put it at the north end and south end of the easement except on the south portion as required by the decree itself. ... This was the old Mat Thrasher home place, he indicated. Dr. McDonald bought the place in 1969 or 70. [Farris] walked this whole place over with [Dr. McDonald] before he bought it *821 from McDonald. [Farris] purchased it in about October of 1997 and has maintained it ever since. There’s been no interruption of his use of the triangle since that time. He uses the easement some four or five times a year as the most efficient route to go down the rest of his property. And basically, this was a crude summation, I’ll admit, of the testimony in this case.
Now, let’s get back to the easement itself.
⅜ * *
The Court here has observed the exhibits that have been reflected in evidence here.... These exhibits clearly indicate to this Court that there is no intent by Mr. Farris to abandon this easement. I point out that this Court granted him that easement by decree when it was established by the decree of this Court by agreement of the parties back on September 18, 2003. That easement was established. He didn’t have to come back here today and establish it. [The plaintiffs attorney] and them have challenged very ably the fact that it was actually abandoned.... I don’t find any evidence here today that Mr. Farris has indicated his intention to repudiate ownership of this easement or to abandon it. This case [Stone ] v. Lea Brent Family Investments L.P., [998 So.2d 448 (Miss.Ct.App.2008) ] pointed out, abandonment is a question of fact that requires non-use for an extended period of time as well as the intent to abandon. There are two elements to it. It cites the case of Bivens v. Mobley, 72[4] So.2d 458 [ (Miss.Ct.App.1998) ], decided by the Mississippi Court of Appeals in 1998. Evidence of abandonment must be full and clear ... there must be some clear unmistakable affirmative act or series of acts indicating a purpose to repudiate ownership. The Court does not find that that existed here on the part of Mr. Farris.
The Court went on to quote the Bivens case and stated protracted non-use for an extended period of time manifests] a presumption of abandonment. [Id. at 461 (¶ 11) ]. But the Court here does not find any such presumption to apply here because there was no protracted non-use for any extended period of time. And the Court in that case went on to so hold as I’ve indicated.
I have not overlooked the memo that [the plaintiffs attorney] submitted in connection with this case wherein he cited the Court of Appeals in Swan v. Hill, 855 So.2d 4[59] [(Miss.Ct.App. 2003) ], a 2003 decision of the Court of Appeals. He said when a trial court determines whether an alternative route is reasonable for the purpose of a claim for easement by necessity, it must look to determine whether [an] alternative route would involve disproportion of expense and inconvenience to the individual. The Court should not award an easement by necessity when an alternate route exists but it is longer and more inconvenient. Well, first of all, this Court has already ordered this easement, so that’s not even an issue before this Court. Now, I realize an alternative route that’s been emphasized here by the testimony would say and show that there was some other way that Mr. Farris could get to his property by non-use of this particular easement that was granted to him by this Court. This Court is not going to disturb that order.
[[Image here]]
Now, we get down to the matter of the triangle. This, of course, is where the bur comes under the saddle. The testimony to some degree is conflicting here, but this Court cited at the beginning *822 that this Court is one who weighs the credibility of the witnesses, the demean- or of the witnesses. I’m going to be frank with you, I was impressed by J.T. Farris and by Terry Farris and the type of responses and answers that they gave in this case. I was impressed by their credibility in this case....
In the Brent case that I cited earlier, gives to us [sic] as do many other cases the elements of adverse possession. And they cited those quite extensively in that Brent case, which I noted was decided, as I said, December 16th of 2008. There was the issue of adverse possession that’s been raised by both parties as [to] the triangle in this case.
Those elements are simply this: Number one, under claim of ownership. The testimony is here that Terry Farris contends he owns this property. On the conflicting side of it, Ms. Stancil says that they own it by deed. I don’t know that that deed — I’ve not seen a deed that necessarily includes that description of this particular triangle. And consequently, the claim of ownership was obviously made earlier by Dr. McDonald when he bought this property. It was subsequently sold to Mr. Farris, Terry Farris, in 1997, and he has claimed it under ownership for more than 10 years, which is the rule under Section 15-1-13 of the Mississippi Code as to adverse possession, which simply reads as follows: 10 years actual adverse possession by any person claiming to be the owner for that time of any land, uninterrupted is continued for 10 years by occupancy, descent, conveyance, or otherwise, and whatever way such occupancy may be commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, citing the case of Buford v. Logue, 832 So.2d 594 [ (Miss.Ct.App.2002) ], a 2002 case of the Mississippi Court of Appeals. And there they set out these elements as did the Bivens case.
The second element is that of actual or hostile possession. The testimony here of Mr. Farris is that he mowed this property. He has continuously held it out to the world as being his own since 1997. That was some, what, 12 years ago. The actual and hostile use of it, actual possession is not within itself [enough] to give adverse possession, but it must have an effective control over a definite area of land evidence by things visible to the eye or perceptible to the senses....
Here there was the observance and the observation of the old fence line along the south line of this red property, the triangle. That old fence line going down to the old pine tree and then indicating the end of that and going back to the northwesterly direction was something of observation to this Court indicating a definite area of land. That old fence line historically and traditionally and legally has been considered the line in case after case that I won’t go into in this decision here today. And accordingly, this Court finds that that element is met.
The third element in the adverse possession is open, notorious!,] and visible. It was clearly open here[,] that even the Stancils admitted that this property was cut down or some trees were cut along this so that Ms. Thrasher could see the road, down the road. Well, you say that establishes adverse possession in them[,] but I was given no definitive area as such for that. Nevertheless, here comes Mr. Farris[,] and he buys this land and gets it from Dr. McDonald, who had owned it some 12 or 14 years or more, and it was open, notorious!,] and visible to him and to Dr. McDonald. He stated they walked the lines around this prop *823 erty before he ever bought it. And this is one of the old transitional [sic] ways of determining ownership or boundaries or what they might observe there. And it was open, notorious!,] and visible in so far as this Court is concerned.
The next part of this was exclusive. There’s some conflicting testimony here as to whether this was totally exclusive by Mr. Farris, but there is no concluding [sic] testimony here on the part of any of the witnesses that I’ve heard here. To say the element of exclusivity [sic], the claimant’s conduct must afford an unequivocal indication that he is exercising dominion of a sole owner. The case of Keener Properties [, LLC] v. Wilson, 912 So.2d 954 [ (Miss.2005) ], a 2005 decision of the Court of Appeals [sic]. Exclusive use does not mean that no one else uses the land or easement. Moran v. Sims, 873 So.2d 1067 [ (Miss.Ct.App.2004) ] and on and on, we could go. The Court finds that the substantial evidence in this case, the most credible evidence that I’ve seen, admitted some contradictions but that showing that exclusive possession of that triangle has been that for a period of 10 years or more on the part of Mr. Farris. The next element of the adverse possession is peaceful. Peaceful is defined as ‘marked by[,] conducive to[,] or enjoying peace, quite [sie][,] or calm,’ citing the case of Biddix v. McConnell, 911 So.2d 468, [477 (¶25) (Miss.2005)] and that even quoted Webster’s Third International Dictionary. And here we find that this area of this triangle has been peaceably observed until we go out there and Mr. Farris comes and finds them putting up a fence, moving it up 61 feet from the old fence line. And this Court — this indicates an interruption or attempted interruption but not a conclusive one and not a valid one. Therefore, the Court finds that the peaceful possession by Mr. Farris is there as to this triangle.
The next element is continuous and uninterrupted for a period of 10 years. I’ve already touched on that. But this clearly indicates that when this is found to exist for some 10 years, as is the case here since 1997, that it is continuous and except for some minor you might say interruptions about the light pole and the fence, the posts being put up, it was uninterrupted for 10 years.
Accordingly, this Court finds that the triangle ... has become the property of Mr. Farris by adverse possession and the Court so finds and so holds here today.
¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 10. We “will not disturb a chancellor’s findings if they are supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.” Stone, 998 So.2d at 452 (¶ 13). However, we review questions of law under a de novo standard. Id.

1. Easement

¶ 11. The question of whether Farris abandoned the easement was entirely one of fact. As the chancellor properly noted, he was the ultimate fact-finder in this case. Farris and Terry testified that he still used his easement four or five times a year. Furthermore, there was no written provision in the agreed order granting the easement to rescind the easement if the flooding problems on the land were corrected. In fact, the easement did *824 not even mention the flooding problems that were alleged at the 2009 trial. Under these facts, we cannot find that the chancellor abused his discretion or was manifestly wrong.
¶ 12. This contention of error is without merit.

2. Adverse Possession

¶ 13. Stancil primarily argues that the chancellor’s judgment should be reversed as to the finding of adverse possession because advérse possession requires a finding by clear-and-convincing evidence. As the chancellor noted from the bench, the testimony regarding the triangular piece of land was extremely contradictory. Essentially, Stancil and her witnesses testified that Farris never cared for the triangular property and that she owned the land by deed. Farris and his father testified that Farris regularly cleared the same land. According to Farris, the land had been presented as part of his property when he purchased it; Terry testified that the triangular portion had always been understood to be part of the Thrasher property, which is what Farris currently owns.
¶ 14. It is impossible to deny that there was contradictory evidence in this case. However, as the chancellor stated from the bench, he simply found Farris and Terry far more credible as to the ownership of the triangular property. The chancellor believed that Farris had proven adverse possession by clear-and-convincing evidence. We decline to reverse that judgment simply because Stancil and her witnesses testified contrarily. If clear and convincing evidence could never be shown in the presence of contradictory testimonies, virtually no case requiring a showing by clear-and-convincing evidence could be proven. Such is clearly not the case.
¶ 15. Farris and his father presented sufficient evidence to prove adverse possession; according to their testimonies, Farris’s adverse possession of the property was complete in 2007, as he purchased his property in 1997 and exerted an ownership interest in the triangular piece of land from that time. There is nothing to show that the chancellor abused his discretion or that his finding — that Farris successfully proved adverse possession of the triangular piece of property — was clearly erroneous. This contention of error is without merit.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF ITAWAMBA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.