## Columbus & G. Ry. Co. *v.* Dunn.

(Division B. Jan. 16, 1939. Suggestion of Error Overruled Feb. 27, 1939.)

[185 So. 583. No. 33513.]

Denman & Everett, of Greenwood, for appellant.

Pollard & Hamner, of Greenwood, and Vardaman S. Dunn, of Jackson, for appellee.

**R. C. Stovall**, of Columbus, for appellant on suggestion of error.

Argued orally by **Richard Denman** and **Frank E. Everett, Jr.**, for appellant, and by **Vardaman S. Dunn** and **W. M. Hamner**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This appeal is from a decree cancelling the claim of title of appellant railway company to eighty acres of land and also its claim to an easement over a strip of land adjacent thereto formerly used as a right of way for a spur-track from the main line of the railroad to a gravel pit on the eighty acres in controversy. The parties claim through a common source of title, namely S. I. Donley and wife, who conveyed the property in controversy to the Southern Railway Company in Mississippi, during the year 1905, by warranty deed, from which we quote certain presently pertinent provisions, which follow the description of the land and right of way conveyed, as follows:

"We hereby grant to said Southern Railway Company in Mississippi, its successors and assigns the right peaceably to enter in and upon our said land and locate, build, operate and maintain a track over, through and upon said land without let or hindrance on the part of ourselves, our heirs, executors, administrators and assigns and run cars over, through and upon said track and to remove the rails, cross ties and bridges from the same whenever it pleases said Southern Railway Company in Mississippi, its successors or assigns.

"This deed is made, however, upon the express understanding and condition that in the event of the Southern Railway Company in Mississippi, its successors or as-

signs shall have removed all of the gravel and other materials which it or they may desire from the land hereby sold and conveyed, and shall have removed its track from said land as aforesaid and ceased to use the same, that then and in those events the said East Half (E½) of Northeast Quarter (NE¼) of Section 12 and the right-of-way and privileges granted over the said Northeast Quarter (NE¼) of Southeast Quarter (SE¼) of Section 12 shall revert to us, our heirs, executors, administrators and assigns. It is further understood and agreed that we reserve the right to cultivate free of rent so much of said Southeast Quarter (SE¼) of Northeast Quarter (NE¼) of said Section as is now cultivated, not exceeding however, 3½ acres, and being south of the located line of said spur track in said Southeast Quarter (SE¼) of Northeast Quarter (NE¼) of said Section 12.''

A paragraph of the deed immediately preceding those above quoted defines the right of way as being definitely located according to an attached blue print made a part of the deed.

Pursuant to the terms of the grant the spur-track located on the right of way was maintained and kept in use by the grantee, its successors and assigns, from the year 1905 until the latter part of the year 1930 or early part of 1931. The spur-track was about one and one-half miles long and extended from the main line of the railroad in a northeasterly direction so as to diagonally cross lands belonging to W. L. Deloach and the certain land described in the deed then belonging to the grantors other than the eighty acres conveyed therein. Gravel was hauled continuously over the spur-track from the pit on the eighty acres, referred to in the testimony as the ''Donley Pit,'' for many years prior to 1928, and was hauled thereover from the year 1928 until the latter part of the year 1930 from what is known as the ''Montgomery and Ray Gravel Pit'' which was further removed from the main line of the railroad. From the year 1917 until the year 1928 the Donley Pit was operated

by one L. S. Hemphill for the railroad company, and from which operation the company received 5c per cubic yard for the gravel; the principal benefit received by the company being derived from the hauling over the spur-track, and from thence to the destination of the cars.

In 1927 it became necessary that an extension of the lease of the right of way over the Deloach land be procured. The sum of $200 was asked by Deloach for such extension. The railroad company thereupon notified Hemphill that he would have to pay one-half of the amount required to get the extension if he desired to continue operating the pit. Hemphill testified that the reason assigned for requiring him to pay half of the amount demanded was that there was not enough gravel left in the pit to justify the railroad company in paying the full amount. He was obligated to keep up the spur-track, but not the lease. Hemphill acceded to the requirement of paying part of the price for the renewal of the lease mainly for the reason that he wanted to later operate the Montgomery and Ray Pit located beyond the Donley Pit. In 1928 Hemphill ceased entirely to remove gravel from the Donley Pit, and thereafter operated the Montgomery and Ray Pit, using the spur-track for the purpose, until the latter part of the year 1930. He testified that his reason for abandoning the Donley Pit was that the strata of gravel there was playing out and that the overburden, that is to say the strata of dirt above the gravel, was from ten to forty feet in depth, and that the pit could not any longer be profitably operated. This fact was reported to the railroad company, and finally, after Hemphill no longer desired to operate the Montgomery and Ray Pit and continue the use of the spur-track, a conference was held with the president and the general counsel of the railroad which resulted in the company giving its written consent both for the operation of the Donley Pit to be abandoned and the spur-track to be taken up and entirely removed in order that the materials might be used in providing a spur-

track from another point on the railroad to another gravel pit at Valley Hill some distance away. Accordingly a contract was entered into between the railroad company and Hemphill in March 1931 to carry out this plan and the spur-track was taken up and removed, including the cross ties, spikes, rails and bridges. One of the bridges was more than eighty feet in length, and the testimony shows without conflict that it would have cost between $5,000 and $6,000 to re-lay the spur-track so as to resume the operation of the Donley Pit at any future date. The bill of complaint alleged and the answer did not deny the allegation, and neither did the proof disclose the contrary, that there has never at any time existed any intention or purpose on the part of the railroad company to re-lay this spur-track as a means of further operating the Donley Pit, even if the language of the deed could be construed to grant such right. The proof also discloses that when the railroad company caused the spur-track to be taken up and removed there was left no other means of access from the main line to the Donley Pit except across lands of the appellee, and that there was no other practicable means of access or approach to this pit since it is surrounded by rugged hills in other directions than from toward the railroad. When the removal of the spur-track was complete appellee went into full possession of the eighty acres of land on which the gravel pit was located; and thereupon fenced about thirty acres for pasture, and from time to time cleared land in addition to the three acres in cultivation mentioned in the deed hereinbefore referred to until he had put into cultivation a field of approximately sixteen acres, without objection on the part of appellant. In 1933 the railroad company executed a lease of the gravel pit in favor of A. M. Arpin wherein it was stipulated that the railroad company would protect the lessee by securing the right of way to the pit, and that if the right of way became unavailable for any reason the lease would be cancelled. Arpin removed a few loads of

gravel from the pit but appellee thereupon posted his private road against trespassing to prevent it from being cut up and the bridges and culverts ruined by hauling such heavy loads thereover. The lease to Arpin failed of further performance. In 1935 the railroad company executed a lease to the Southland Gravel Company and experienced the same difficulty as to securing a right of way.

No title by adverse possession accrued to appellee prior to the filing of this suit, but his possession and improvement of the land, following the removal of the spur-track, without objection or further effort on the part of the railroad company to have the pit again operated, together with the fact that in removing the spur-track the railroad company had precluded itself from further access to the pit by any practicable means or route, were all held by the chancellor to have clearly shown that at the time the company consented for Hemphill to finally abandon operation of the pit and caused the spur-track to be removed, the grantee, its successors and assigns, had "removed all of the gravel and other materials which it or they desired to remove from the land sold and conveyed." If these acts constituted an abandonment, then the fact now emphasized by appellant that in later years improved methods and appliances have become available to enable appellant to remove the gravel beneath the overburden or strata of dirt at a profit, and that this changed condition has caused the appellant to want to repossess the land and resume operation, would be immaterial on the question of whether the abandonment had become complete at a prior date. Moreover, the deed did not confer the right to re-lay the spur-track after it had once been taken up and removed, and the language of the deed shows that it was contemplated by the parties that the gravel was to be removed over the right of way which was definitely defined and located in the deed of conveyance and the blue print attached thereto and made a part thereof.

In 9 R. C. L. 813, sec. 69 it is stated generally that "an abandonment of an easement will be presumed where the owner of the right does, or permits to be done, any act inconsistent with its further enjoyment." In Scott v. Moore, 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749, it is said: "A party entitled to a right of way or other mere easement in land may abandon and extinguish such right by acts in pais, and without deed or other writing; and a ceasure of the use, coupled with any act indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. Vogler v. Geiss, 51 Md. [407], 408." The gravel pit was worthless to the grantee, its successors and assigns, to be operated primarily for the profit to be derived from the transportation of the gravel in the railroad business, without the right of way. The use of the right of way is so closely associated with the removal of gravel from the Donley Pit that the one cannot be separated or considered apart from the other in construing the deed in question. It is true that the deed provides that when the grantee, its successors or assigns, "shall have removed all of the gravel and other materials which it or they may desire from the land sold and conveyed, and shall have removed its track from said land and ceased to use the same, that then and in those events the land described . . . and the right of way . . . shall revert to the grantors, their heirs, executors, administrators and assigns;" and that the deed contemplated that the words "then and in those events" should refer both to the removal of all gravel desired and the removal of the spur-track, but the chancellor found from the evidence that both conditions in fact existed and concurred to constitute the abandonment necessary to cause the title to revert; and we are not able to say that the finding of the chancellor as to the intention to abandon was manifestly wrong. In fact, there is no material conflict in the testimony on this issue. The case presents merely

an issue as to what facts are sufficient to constitute an abandonment.

In 1 Am. Jur., sec. 11, it is said: "Since abandonment is so largely a question of intention, all the facts and circumstances, and particularly the acts and conduct of the parties, tending to show or disprove the intention to abandon may be taken into consideration, as the intention is ordinarily a question of fact, although the situation of the property and conduct of the former owner may in certain cases be sufficient to imply in law an abandonment. In determining claims of abandonment the courts have generally announced that each case must depend mainly on its own particular circumstances, the evidence of which must be full and clear. Proof of abandonment must be direct or affirmative, or must reasonably beget the exclusive inference of the intentional relinquishment of the property right involved." Also, in 1 Am. Jur., Page 9, sec. 13, it is said: "As in other cases involving the ascertainment of a particular intent, direct evidence of an intent to abandon property or rights of property is not required, but it may be inferred from all the facts and circumstances of the case which are competent to go to the jury as evidence by which that fact may be established. It may be inferred from the conduct of the owner and the nature and situation of the property, without the positive testimony of the owner in affirmation of the fact. However, to justify the conclusion that there has been an abandonment, there must be some clear and unmistakable affirmative act or series of acts indicating a purpose to repudiate ownership. For instance, an intentional abandonment of a right of way by a railway company was shown by its removal of tracks, ties, rails, and bridges, and the neglect and nonuser of the right of way for a period of ten years." It is clear however that an abandonment for a shorter period than ten years will suffice under the principle announced in 1 Am. Jur., Page 7, sec. 9, as follows: "The moment the intention to abandon and the relinquishment of posses-

sion unite the abandonment is complete, for time is not an essential element of abandonment.'' We think that the rule enunciated in the quotations hereinbefore appearing are supported by the decisions generally, and since an understanding of the case at bar has necessitated a full statement of the facts in this opinion we shall not further prolong the same by a citation and discussion of the various decisions in point.

From what we have said, it follows that the decree of the court below must be affirmed.

Affirmed.