## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-01145-SCT

*CHARLES W. CAVANAUGH*

*v.*

*J. E. O'CONNELL AND BILLY V. HARVEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/1997 |
| TRIAL JUDGE: | HON. LARRY J. BUFFINGTON |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | HARRY JONES ROSENTHAL |
| ATTORNEY FOR APPELLEES: | JOHN K. KEYES |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND RENDERED IN PART - 1/21/1999 |
| MOTION FOR REHEARING FILED: | 2/2/99 |
| MANDATE ISSUED: | 4/22/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### SUMMARY

¶1. This appeal arose from a decision of Chancellor Larry J. Buffington in the Jefferson Davis County Chancery Court handed down August 8, 1997. The Chancellor addressed the question of whether a term royalty deed executed on February 14, 1977, had expired due to specific provisions in the royalty deed. The Chancellor found the term royalty deed executed by Charles Cavanaugh and wife in favor of J. E. O'Connell and Billy V. Harvey was a valid term royalty deed down to the DIFFRIENT SAND and any and all production below the sand should revert back to Cavanaugh and his heirs.

¶2. Cavanaugh appealed listing two issues.

> **I. THE COURT WAS MANIFESTLY IN ERROR IN FINDING THAT THERE WAS PRODUCTION OR ANY GOOD FAITH EFFORTS TO OBTAIN PRODUCTION FROM THE HAROLD STRINGER WELL 24-11 FROM NOVEMBER 1993 TO APRIL 1994**

> **II. THE CHANCELLOR ABUSED HIS DISCRETION IN FINDING THE TERM**

**ROYALTY DEED DID NOT TERMINATE DOWN TO THE "DIFFRIENT SAND," BUT DID TERMINATE AS TO THE SANDS BELOW THE "DIFFRIENT SAND"**

## FACTS OF THE CASE

¶3. Charles Cavanaugh brought an action against J.E. O'Connell and Billy Harvey seeking a declaration that the term of the royalty deed entered into between the parties on February 14, 1977, had expired.[1]

¶4. The original royalty deed was for an express time period or term, as follows:

> This conveyance shall be for a period of five (5) years from the date hereof, and as long thereafter as oil, gas or other minerals are produced from said lands, or from lands with which said lands are pooled or unitized, and also as long thereafter as drilling or reworking operations are being conducted on said lands, or on lands pooled or unitized therewith, without more than 90 days cessation of operations, in an effort to produce oil, gas or other minerals, and if said operations result in the production of said minerals, then for as long thereafter as oil, gas or other minerals are produced from said lands, or from lands pooled or unitized therewith. A shut-in gas well shall be considered as a producing well and shall perpetuate the term of this conveyance.

¶5. The initial five year term of the royalty deed expired February 14, 1982. The key issue at trial, therefore, was whether production continued under the terms of the above clause perpetuating the deed. The well was successfully completed some time in late 1977 or early 1978 and was designated the "Harold Stringer 24-11 Well." System Fuels was the operator of the well from the time it was brought into production through the period at issue in this appeal.

¶6. Cavanaugh presented evidence showing production ceased at the well in November, 1993 and no production or reworking operations occurred until May, 1994. This evidence came in the form of testimony from two witnesses, Thomas Carroll and Cavanaugh, and from production records from the State Oil and Gas Board. According to Cavanaugh, the term royalty deed expired by its own terms because there was no production at the well for more than 90 days.

¶7. O'Connell provided one witness to testify to continued activity at the well during the period in question. Sam Reynolds, a Field Supervisor for System Fuels, described System Fuel's activities at the well from November, 1993 through December, 1994. Reynolds stated System Fuels inspected the well throughout the period and kept some equipment at the well site. He also described some swabbing and reworking operations undertaken at the well site during the period in question. Additionally, Systems Fuel, during the time in question, filed monthly production reports.

¶8. The well in question was located on a 640 acre production unit comprised of all of Section 24, Township 6 North, Range 17 West, Jefferson Davis County, Mississippi, in the Holiday Creek Field. After the well was in production for some time, System Fuels petitioned the State Oil and Gas Board for permission for a workover on May 25, 1994. This petition asked for permission to test the DIFFRIENT SAND for oil and stated that if the tests were successful, filings would be made to reform the unit from gas to oil. According to the State Oil and Gas Board records, there was no oil, gas or water produced at Harold Stringer Well 24-11 from November, 1993 through May, 1994. In June, 1994, the well produced 282 barrels of oil and no gas or water.

¶9. Based on the testimony and the other documentary evidence presented at the hearing, the Chancellor

found the term royalty deed valid and in full force and effect down to the DIFFRIENT SAND. In making this determination the Chancellor found the well was shut-in. Pursuant to the deed, the 90 day cessation term did not run while the well was shut-in. The Chancellor also found sufficient evidence existed to show "that there may have been an abandonment by System Fuels, Inc. to the production below the DIFFRIENT SAND." The Chancellor decreed the term royalty deed was valid down to the DIFFRIENT SAND, but terminated and reverted back to Cavanaugh as to the oil, gas, and minerals below that sand.

## DISCUSSION OF LAW

### I. THE COURT WAS MANIFESTLY IN ERROR IN FINDING THAT THERE WAS PRODUCTION OR ANY GOOD FAITH EFFORTS TO OBTAIN PRODUCTION FROM THE HAROLD STRINGER WELL 24-11 FROM NOVEMBER, 1993 TO APRIL, 1994.

¶10. The standard of review this Court uses for review of a Chancellor's decision is abuse of discretion. ***Church of God of Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.***, 716 So. 2d 200, 204 (Miss. 1998).

¶11. The Chancellor did not state he found the Harold Stringer 24-11 Well produced during the period from November, 1993 to April, 1994. Instead he found, based on the evidence, the well was shut-in. According to the terms of the deed, a shut-in gas well is considered a producing well and will not trigger the 90 day cessation clause.

¶12. Mississippi has never defined the general requirements for a shut-in well where the term is not defined in the instrument.

¶13. A shut-in well is generally defined as "[a] producing well that has been closed down temporarily for repairs, cleaning out, building up pressure, lack of a market, etc." Howard R. Williams & Charles J. Myers, Oil and Gas Law Vol. 8, Manual of Oil & Gas Terms Annotated, 1026 (1996).

¶14. The Fifth Circuit recently defined shut-in as follows.

> "[S]hut in" is a generic term used to refer to the closing of the valves through which oil and gas flow through a well, its legal meaning refers to the closing of valves when production at a well capable of producing in paying quantities is temporarily halted to repair or clean the well, to allow reservoir pressure to build, or for lack of market.

***Norman v. Apache Corp.***, 19 F.3d 1017, 1027 (5th Cir. 1994).

¶15. Tennessee recently addressed the meaning of shut-in in the context of a lease construction. In ***P.M. Drilling, Inc. v. Groce***, 792 S.W.2d 717, 723 (Tenn. Ct. App. 1990), the court defined a shut-in well as a "producing well that has been closed down temporarily for repairs, cleaning out, building up pressure, lack of market, etc." ***Groce***, 792 S.W.2d at 723.

¶16. The distinction between a temporary cessation due to a well being shut-in and a permanent cessation of production or an abandonment is a question of fact. *See* ***Wagner v. Smith***, 456 N.E.2d 523, 523 (Ohio Ct. App. 1982) (stating critical factors in determining status are length of time and attendant circumstances).

¶17. The Chancellor's decision that the Harold Stringer Well 24-11 was shut-in during the period from

November, 1993 to April, 1994 is supported by the record and was not an abuse of discretion. Although production ceased and activity slowed dramatically at the 24-11 well, System Fuels did not abandon the well. Systems Fuel continued to file monthly production reports with the Oil and Gas Board. Some necessary equipment was left at the site and Systems Fuels employees checked the site. Workover operations commenced within six months of the last production and production resumed at the well within seven months of that date. All of the foregoing evidences the intent of Systems Fuel to perpetuate the terms of the deed. Because the terms of the deed provided a shut-in well would be considered as a producing well, the 90 day cessation clause did not take effect and the deed remained active.

¶18. For these reasons, this assignment has no merit.

## II. THE CHANCELLOR ABUSED HIS DISCRETION IN FINDING THE TERM ROYALTY DEED DID NOT TERMINATE DOWN TO THE "DIFFRIENT SAND," BUT DID TERMINATE AS TO THE SANDS BELOW THE "DIFFRIENT SAND".

¶19. In this assignment of error, Cavanaugh asserts the Chancellor abused his discretion in finding the term royalty deed did not terminate down to the DIFFRIENT SAND, but did terminate as to production below the DIFFRIENT SAND. Cavanaugh argues the deed either terminated to the entirety of the mineral interest or not at all.

¶20. The Chancellor made this distinction between the DIFFRIENT SAND and the below by finding that System Fuels, Inc., abandoned the sands below the DIFFRIENT SAND, but did not abandon the DIFFRIENT SAND. A review of case law in this state and in other jurisdictions found no instance where an appellate court reviewed a lower court decision finding part of a mineral interest abandoned and part not abandoned when no distinction was made in the instrument conveying the mineral interest.

¶21. Generally, to support a finding of abandonment, the trier of fact must find an intent to abandon and evidence supporting abandonment from the surrounding circumstances. Intent to abandon is a question of fact. *See Columbus & G. Ry. Co. v. Dunn*, 185 So. 583 (Miss. 1939) (describing abandonment of property).

¶22. Other jurisdictions in similar situations have held that any operation upon a single tract of land prevents the extinguishment or abandonment of rights.[2] Nothing in the term royalty deed distinguishes between the DIFFRIENT SAND and other sands. The term royalty deed is for the full mineral interest in the described lands. Without hesitation, we hold that the language of the term royalty deed is clear and unambiguous on its face. Unambiguous and clear deeds are construed as written. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.,* 716 So. 2d 200, 209 (Miss. 1998) (other citations omitted). Nothing in the present deed indicates an intent by the parties to distinguish between those areas above and below the DIFFRIENT SAND.

¶23. Because the term royalty deed did not expire by its own terms and remained in effect as described in Part I of this opinion, we find the Chancellor abused his discretion in holding the mineral interest was partially abandoned. On this issue we reverse the Chancellor's decision and render that the term royalty deed is wholly valid.

## CONCLUSION

¶24. The Chancellor did not abuse his discretion in finding the term royalty deed did not expire by its own

terms. The evidence presented at trial supports the Chancellor's finding the gas well was shut-in. Under the terms of the term royalty deed, a shut-in well is considered a producing well and the 90 day cessation of production clause will not be triggered if a well is shut-in. For this reason the term royalty deed did not expire due to a cessation of production and it remained valid.

¶25. The Chancellor did abuse his discretion in finding the mineral interest partially abandoned. Given the language of the term royalty deed, the mineral interests cannot be partially abandoned. Because there is no evidence to support the Chancellor's finding of abandonment, we reverse the Chancellor's decision and render to the effect that the term royalty deed is wholly valid.

¶26. **AFFIRMED IN PART, REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT WRITTEN OPINION.**

1. At some point after the deed was executed, O'Connell and Harvey leased their interest to System Fuels, Inc.

2. *See e.g. **Ohio Oil Co. v. Ferguson***, 34 So. 2d 746, 752 (La. 1947); ***Waggoner Estate v. Sigler Oil Co.***, 19 S.W.2d 27, 29 (Tex. 1929).