CARLTON, J.,
for the Court:
¶ 1. This appeal stems from a complaint filed in the Adams County Chancery Court by Kenneth G. Haik and Diana W. Haik, alleging that James D. Gammill, Britton D. Gammill, John T. Ball, and Eileen Ball[1] possessed no right to access their respective properties by use of an existing driveway (hereinafter “Service Road”) on the Haiks’ property. The Gammills and Balls filed counterclaims and amended counterclaims asking the chancellor to determine that the Gammills and Balls had an easement over the Service Road to access their respective properties.
¶ 2. The chancellor found the Gammills and Balls were entitled to an implied easement by necessity, providing a non-exclusive easement for all purposes of ingress and egress on the existing gravel Service Road. The record shows that the grantee of the estate conveyed this easement along the Service Road in 1967 when subdividing commonly owned lots that were part of her dominant estate. The chancellor found the entitlement to an implied easement by necessity existed after determining that the Haiks’ property, along with the Gammills’ and Balls’ properties, constituted subdivided parts of a previously commonly owned estate. The chancellor further determined that the Gammills and Balls possessed no access to their properties except by using the implied easement by necessity along the Service Road.
¶ 3. With respect to the cross-appeal, the chancellor found no abandonment of an express easement conveyed in 1968 by ad *774 jacent property owners for the building of a dedicated road to access South Union Street. The chancellor found no abandonment of this express easement even though no such road had even been built. In his judgment, the chancellor also ordered the Gammills and Balls to maintain the Service Road.
¶ 4. Finding substantial evidence in the record supporting the decision and judgment of the chancellor, we find no abuse of discretion and affirm. See Johnson v. Hinds Cnty., 524 So.2d 947, 956 (Miss.1988).
FACTS
¶ 5. The Haiks filed a complaint in the Adams County Chancery Court alleging that the Gammills and Balls possessed no right to access each of their respective properties by use of the Service Road located on the Haiks’ property. The Gam-mills and Balls responded by filing a counterclaim and amended counterclaim requesting the chancellor to determine that the Gammills and Balls possessed an easement over the Service Road, allowing them to access their respective properties.
¶ 6. None of the parties disputed that an express easement for ingress and egress existed over the Service Road, granted by the Haiks’ predecessors in title pursuant to the terms of a deed executed on January 5, 1968. However, the Haiks contended that the easement over the Service Road is appurtenant, by its express terms, only to a certain 2.3-acre lot owned by Pat Doherty and Bill Crews. The Haiks asserted that the easement failed to convey a right of ingress or egress to the properties owned by the Gammills and Balls. The Haiks argued that the Gammills and Balls should be required to access their properties over a separate easement (hereinafter referred to as the Dedicated Road easement) abutting their respective lots and also conveyed by the January 1968 deed.
¶ 7. The record reflects that Louise Met-calfe Williams, the prior owner of the property at issue, subdivided her property [2] in 1967 and conveyed a 2.3-acre tract of land to her nephew and his wife, William and Isabel Adams. The 2.3 acres of land did not abut a public road. The deed stated:
And for the same consideration, I do hereby give and grant unto the Grantees a right-of-way and easement through the “Ravenna” property, extending from the easterly end of Ravenna Road as shown on the map of survey hereto attached, and running alongside of and parallel to the existing gravel and macadam access and service road to the tract of land hereby conveyed, which right-of-way and easement is for the purpose of installing and maintaining gas, electricity, water, sewage and other utility services from existing service connections on Ravenna Road to the tract of land hereby conveyed.
Williams then built a house on a 3.1-acre lot where the Service Road is located (known as the “Ravenna house lot”).
¶ 8. The Gammills and Balls each subsequently received a separate and distinct easement for an adjacent property to access a public roadway, South Union Street. With respect to this alternate access to the Gammills’ and the Balls’ properties, the chancellor’s findings reflect that on January 5, 1968, both Williams and Roane Fleming Byrnes, the owner of the adjacent Ravenna property known as “Ravenna-side,” conveyed to Williams and Isabel Adams, and their heirs and assigns, a “perpetual, non-exclusive right[-]of[-]way and easement” across Ravenna and Raven- *775 naside from South Union Street. The right-of-way and easement conveyance also contained the following language:
Until such time as a roadway is built and completed on the right-of-way here-inabove described, for the same consideration herein expressed, the undersigned Mrs. Louise Metcalfe Williams does hereby give and grant unto [William and Isabel Adams], their heirs, successors, and assigns, a non-exclusive easement for all purposes of ingress and egress in, on, over and across the presently existing gravel and macadem access and service road extending from the east end of Ravenna Road as shown on the plat hereto attached to the 2.3[-]acre tract of the Grantees as shown on the plat hereto attached.
The chancellor stated that this conveyance “did not say who was to build the roadway or when the roadway was to be built.” The chancellor also noted that the minutes of the Natchez Planning Commission reflected that the property owners did not want to have the new street constructed and wanted to access their lots through the service road as previously conveyed to the Adamses.[3]
¶ 9. The record reflects that from 1971 to 1973, Williams further subdivided the Ravenna property by conveying three additional common lots to the Adamses. These three lots did not include, or reference, a conveyance of the right-of-way across the Dedicated Road easement conveyed by Williams and Byrnes (the property owner of the adjacent Ravennaside). Additionally, the 1971 to 1973 conveyances of additional common lots failed to include an express easement along the Service Road; instead, “all recorded rights[-]of[-]way, easement roadways, power lines and railroads appearing of record or observable on the ground” were expected from all three conveyances.
¶ 10. The Adamses later sought permission from the Natchez Planning Commission to divide one of the common lots into two separate lots. The Adamses then conveyed one of those lots to Donald and Lynn Ogden in 1981. The- Ogdens later conveyed the tract of land back to the Adamses.
¶ 11. After the Adamses passed away, their heirs conveyed all four tracts to the Gammills by a deed dated July 5, 1994. The deed conveyed the Service Road easement as well as the Dedicated Road easement. In 1998, the Gammills conveyed one of the tracts to the Balls, and this conveyance also included the Service Road easement and Dedicated Road easement. From 2002 to 2007, tracts of the property were conveyed to Billie F. Dean,[4] Reuben Harper, Patrick Doherty, and Bill Crews Jr. All of the conveyances included the Service Road and Dedicated Road easements and rights-of-way.
¶ 12. The Ravenna house lot, where the Service Road is located, was conveyed to Malian and Catherine Morgan, and then to Melody Thayer, and then finally to the Haiks. This conveyance was made subject to any and all utility, drainage, or other easements, whether of use or of record.
¶ 13. The chancellor stated that when he viewed the Ravenna property, he found that the Dedicated Road Easement “has been enclosed and fenced by [Reuben Harper].” [5] The chancellor also observed that *776 past the fence “a deep ravine or large gully ... runs along and almost completely across” the Dedicated Road easement.
¶ 14. During a trial held September 15-16, 2010, the chancellor heard testimony from Duke Edwards, Robert Green, James Gammill, George Ward, David Huber, Reuben Harper, and Robert Hensley. After the Haiks rested, the Gammills, the Balls, and Harper presented testimony in support of then- counterclaims. Harper argued that the Dedicated Road easement had been abandoned. The Haiks admitted that no road has been constructed on the Dedicated Road easement.
¶ 15. The Gammills and Balls presented expert witnesses to testify regarding the cost of building a road over the Dedicated Road easement in 2001 and in present day. The Haiks objected to the testimony of Duke Edwards, Robert Green, and David Huber as expert witnesses. The chancellor overruled the objections as to Edwards and Green, but sustained the objection as to Huber and allowed him to testify as a fact witness. At trial, Edwards provided testimony that the cost of building a road over the Dedicated Road easement could exceed $98,000. Edwards opined that had a road been built in 2001, the cost of construction would have been substantially less. Green, a registered land surveyor, provided testimony to bolster Edwards’s contention that the cost of the alterative access over the Dedicated Road easement would be necessarily increased since the Dedicated Road easement crossed a gully or ravine. Huber, testifying as a fact witness, provided testimony as to the cost to remove certain improvements from the Dedicated Road easement.
¶ 16. On July 22, 2011, the chancellor entered a judgment dismissing the Haiks’ complaint with prejudice and finding that the Gammills and Balls possessed an easement over the Service Road for ingress and egress to their lots.. Specifically, the chancellor stated that at the time of the execution of the warranty deed to the Adamses, the only access or right-of-way to the property was along the driveway leading from Ravenna Street, which would have been an implied easement. The chancellor found that the January 5, 1968 “perpetual, non-exclusive right[-]of[-]way and easement” to the Adamses’ property constituted an “expressed easement to continue until the happening of an event. The event being the building and completion of a roadway along ... the Dedicated Road [easement].” The chancellor ultimately held that the Gammills and Balls and their heirs, successors, and assigns were granted the following:
a[n] implied easement by necessity to a non-exclusive easement for all purposes of ingress and egress in, on, over, and across the existing gravel and macadem access and service road extending from the east end of Ravenna Road to the place where said road intersects the north boundary of [the Gammills’] lot. It is [also] ordered ... [that] the above described easement is to be [16 feet] wide and is to continue along the original road bed of the Service Road.
¶ 17. The chancellor further ruled that the Dedicated Road easement had not been abandoned, and concluded that the easement over the Service Road would terminate if the Haiks or anyone else built a road on the Dedicated Road easement. After hearing testimony regarding the considerable' price increase within a span of less than ten years, the chancellor deduced in his judgment that “the gully or ravine [on the Dedicated Road easement] is washing and widening at a rapid pace.” The chancellor stated that no time limit is set out in the deed as to when the roadway is to be completed or who is to build and complete the roadway. The chancellor or *777 dered that the Gammills and Balls were required to maintain the Service Road at their expense. The chancellor then dismissed the Gammills and Balls’ counterclaims with prejudice, including the claim that the Dedicated Road easement had been abandoned.
¶ 18. The Haiks appealed this judgment. The Gammills and Balls perfected a cross-appeal of the chancellor’s determination that the Dedicated Road easement had not been abandoned and that the easement over the Service Road would terminate in the event that a road is built on the Dedicated Road easement.
¶ 19. On appeal, the Haiks assert the following assignments of error: whether the chancellor erred by determining that the Service Road is appurtenant to the Gammills’ and the Balls’ properties; whether the chancellor erred by determining that the Gammills and Balls possess an easement by necessity over the Service Road; whether the Gammills and Balls failed to establish an implied “enjoyment easement” over the Service Road; whether the chancellor erred by admitting expert testimony not properly disclosed under Mississippi Rule of Civil Procedure 26, as well as testimony from experts not properly designated; and whether the chancellor erred in granting the Gammills and Balls’ request to relocate the Service Road.
¶ 20. In their cross-appeal, the Gam-mills, the Balls, and Harper argue that the chancellor erred in finding that the Dedicated Road Easement had not been abandoned. The Gammills and Balls also submit that they should only be required to pay a pro rata share of the expense to maintain the Service Road.
STANDARD OF REVIEW
¶ 21. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous.” Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002) (citation omitted). We will affirm the chancellor’s findings if they are supported by substantial evidence in the record. Johnson, 524 So.2d at 956.
DISCUSSION
(1) Whether the chancellor erred by determining that the Gammills and Balls possess an easement by necessity over the Service Road.
¶ 22. The Haiks argue that the chancellor erred in finding that the Gammills and Balls possess an implied easement by necessity over the Service Road. The Haiks submit that Mississippi law provides that an access easement by necessity arises only when there is no other means of access. The Haiks assert that the Gam-mills and Balls have other access to the properties over the Dedicated Road easement; therefore, access to their properties by the Service Road is not “strictly necessary” as required by law.
¶ 23. The Haiks further assert that the chancellor failed to address whether or not the Gammills and Balls might possess an implied enjoyment easement over the Service Road. The Haiks submit that an implied easement, which is essential to enjoyment of the land, fails to require a showing of strict necessity; rather, evidence that this easement is “reasonably necessary” is sufficient.
¶ 24. However, the Gammills and Balls argue that the evidence and testimony at trial support the chancellor’s determination they were entitled to an easement by necessity, explaining that without use of the Service Road, they would have no access to their properties. The Gammills and Balls further submit that even if this Court finds no express easement or easement by necessity over the Service Road, the Gammills and Balls have shown that *778 they are entitled to an implied easement for the beneficial enjoyment of their property.
¶ 25. The Mississippi Supreme Court addressed the issue of easements by necessity in the case of Broadhead v. Terpening, 611 So.2d 949, 953 (Miss.1992):
It is well[ Jestablished that an easement by necessity arises by implied grant when a part of a commonly[ Jowned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another.
(Internal citations omitted). We recognize that the owner of the dominant estate fails to possess a permanent right in the easement; the easement continues only as long as the necessity exists. See Taylor v. Hays, 551 So.2d 906, 908-09 (Miss.1989); see also Pitts v. Foster, 743 So.2d 1066, 1068-69 (¶ 8) (Miss.Ct.App.1999).
¶ 26. The claimant seeking an easement by necessity (here, the Gammills and Balls) bears the burden of proving that he is “implicitly entitled to the right[-]of[-]way across another’s land.” Leaf River Forest Prods., Inc. v. Rowell, 819 So.2d 1281, 1284 (¶ 11) (Miss.Ct.App.2002). To satisfy this burden, the Gam-mills and Balls must show strict necessity; that they possess no other means of access to their property. Broadhead, 611 So.2d at 953. The Gammills and Balls must also prove that their property and the Haiks’ property “were at one time part of a larger, commonly[ Jowned parcel of land.” Leaf River, 819 So.2d at 1284 (¶ 11). Finally, the Gammills and Balls must show that the right to use the Service Road “arose at the time of the initial severance from the common owner.” Id. (citing Wills v. Reid, 86 Miss. 446, 453, 38 So. 793, 795 (1905)).
¶ 27. Here, it is undisputed that the parties to this appeal hold land that was part of a larger tract owned by Louise Williams. The chancellor found that “at the time the three additional lots [were] purchased by the [Adamses] from [Louise] Williams, no access existed to these three lots, except along the Service Road.” The chancellor further determined “the three lots had been severed from the commonly owned tract[,] and this severance was done in such a way as to render the three lots inaccessible except by passing over the other portion of the land they were severed from.” Additionally, the chancellor noted that expert witnesses provided testimony explaining that the cost to build a roadway along the Dedicated Road Easement could cost in the range of $49,000 to over $98,000.
¶ 28. Based the chancellor’s determination that the Gammills and Balls possessed no access to their property except along the Service Road, we find no error in the determination that the Gammills and Balls are entitled to an easement by necessity over the Service Road.
(2) Whether the chancellor erred in determining that the Service Road is appurtenant to the Gammills’ and the Balls’ properties.
¶ 29. The Haiks next argue that the easement over the Service Road, conveyed to the Adamses by Louise Williams, is appurtenant only to the 2.3-aere tract referred to in the deed, which is now owned by Pat Doherty and Bill Crews. Thus, the Haiks submit that the Gammills and Balls possess no easement rights over the Service Road.
¶ 30. The Haiks further argue that the chancellor’s findings are unsupported by the record. The Haiks allege that it is clear that the “three additional lots” have at all times had access to South Union *779 Street over the Dedicated Road easement, claiming that the fact that no road had been constructed on the easement is of no legal consequence. The Haiks also argue that the conveyance by Louise Williams to the Adamses of an easement over the Service Road does not grant any right of access to any of the other subdivided lots on the Ravenna property.
¶ 31. However, the Gammills and Balls argue that the easement over the Service Road was not merely appurtenant to the 2.3-acre tract, but rather, it constituted an independent grant of an express right-of-way. The Gammills and Balls submit that Mississippi law states that where an owner of property subdivides a potion of his property and conveys a portion to a third party, that owner implicitly conveys a right-of-way for ingress and egress to the third party.
¶ 32. The Mississippi Supreme Court has explained that “an easement appurtenant runs with the land and transfers with the land upon grant or conveyance of such land in fee simple.” Wis. Ave. Props., Inc. v. First Church of Nazarene, 768 So.2d 914, 918 (¶ 16) (Miss.2000). Additionally, we have affirmed the chancellor’s finding that the Gammills and Balls possess an easement by necessity over the Service Road; we recognize that “basements of way by necessity are appurtenant to the dominant tenement and run with the land.” Broadhead, 611 So.2d at 954; see also Quin v. Sabine, 183 Miss. 375, 375, 183 So. 701, 701 (1938).[6]
¶ 33. In the chancellor’s judgment, he held:
When the court looks at the Right-of-Way and Easement herein, the court looks at the four corners of the instrument and determines the intent of the parties was to grant a means of access to the remaining real property owned by [Louise Williams] as well as to the [2.3-]aere tract already deeded to the [Adamses]. This part of the instrument is not unclear or ambiguous....
[[Image here]]
This [c]ourt is of the conclusion at the time the first lot, being the [2.3-]acre tract[,] was conveyed by [Louise] Williams to the [Adamses], an implied easement was granted to the [Adamses] for access to the lot. When [Louise] Williams sold to the [Adamses] the three other lots, for a total of ... 12.4 ... acres, all of said lots joined and did not have any access to the lots, except by way of the Service Road[;] both [Louise Williams] and [the Adamses] decided to use the Service Road, rather than to build the roadway over the Dedicated Road. The [c]ourt concludes the implied easement along the Service Road attached to the other three lots purchased by the [Adamses] from [Louise] Williams.
¶ 34. Specifically addressing the Haiks’ argument that the easement along *780 the Service Road runs appurtenant to the 2.3-acre tract, and that the Gammills’ conveyance of the tract voided the easement, the chancellor stated:
The court above has already determined at the time the three additional lots [were] purchased by the [Adamses], from [Louise] Williams, no access existed to these three lots, except along the Service Road, so at the time each lot was purchased from [Louise] Williams, an implied easement along the Service Road[ ] attached to each lot.
¶ 35. We review a chancellor’s findings of fact under our “manifest error/substantial evidence” standard. Biddix v. McConnell, 911 So.2d 468, 474 (¶ 17) (Miss.2005). After reviewing the record, we find that the chancellor’s determination that the easement over the service road runs appurtenant to the Gammills’ and the Balls’ properties is supported by substantial credible evidence.
(3) Whether the chancellor erred by admitting expert testimony not properly disclosed under Mississippi Rule of Civil Procedure 26, as well as testimony from experts not properly designated.
¶ 36. The Haiks assert that the chancellor erred in allowing Duke Edwards, Robert Green, and David Huber to provide testimony as expert witnesses.[7] The Haiks submit that the Gammills and Balls failed to respond to expert interrogatories related to Duke Edwards’s testimony, as ordered by the chancellor. The Haiks argue that only documentation they received regarding Edwards’s testimony was a one-page document containing a proposal to construct a road on the Dedicated Road easement. The Haiks assert that the chancellor’s November 5, 2009 order directed the Gammills and Balls to provide the Haiks with the substance of the facts and opinions to which Edwards was expected to testify and a summary of the grounds for his opinions, and the Haiks claim that they never received any of this information.
¶ 37. The Gammills and Balls assert that they indeed complied with the discovery request for expert designation, explaining that they delivered to the Haiks the only information they possessed from Edwards — a copy of the written estimate provided by Edwards detailing the cost of constructing a road across the Dedicated Road easement. The Gammills and Balls point out that at the hearing on a motion to compel, the chancellor stated that if the written estimate provided by Edwards was the only testimony that Edwards would give, then the Gammills and Balls had complied with Rule 26.
¶ 38. Mississippi Rule of Civil Procedure 26(b)(4) provides:
Discovery of facts known and opinions held by experts, otherwise discoverable under subsection (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
(A)(i) A party may through interrogatories require any other party to identify *781 each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
¶ 39. The record reflects that the chancellor overruled the Haiks’ objection, and accepted Edwards as an expert witness on building the type of road that would be necessary to run on the Dedicated Road easement. The chancellor ruled that the document provided by Edwards “does state out the substance and facts and opinions to which [the] expert is expected to testify in that it does state what he is going to do.”
¶ 40. The Haiks also submit that the Gammills, the Balls, and Harper failed to properly designate Robert Green and David Huber as expert witnesses in response to the Haiks’ interrogatories, although the Haiks admit that Harper did state in his response to the interrogatories that Green might have discoverable knowledge. The Haiks assert that the Gam-mills, the Balls, and Harper also failed to designate Green and Huber as expert witnesses within the time required by Uniform Chancery Court Rule 1.10. See UCCR 1.10(A) (“Absent special circumstances the [chancellor] will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial.”).
¶ 41. The record reflects that the chancellor excluded Huber from testifying as an expert witness, but allowed Huber to testify as a fact witness and provide testimony regarding the cost to build a road on the Dedicated Road easement. The chancellor noted that Harper failed to provide the Haiks with notice of Huber’s testimony until two weeks before the trial. However, the chancellor overruled the Haiks’ objection to Green’s expert testimony, explaining that since Green performed the survey showing the location of the Dedicated Road easement, he needed Green’s testimony to explain the location of the Dedicated Road easement and the ravine on the plat of the property at issue. The chancellor expressed that despite the Haiks’ objection, he was allowing Green’s testimony so that he could make “an adequate and intelligent decision concerning where ... the fifty[-]foot right-of-way is [located].”
¶ 42. We review the trial court’s admission or exclusion of expert testimony for abuse of discretion. Poole ex rel. Poole v. Avara, 908 So.2d 716, 721 (¶ 8) (Miss.2005) (citing Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003)). Our supreme court has explained that for a case to be reversed on the admission of evidence, “it must result in prejudice and harm or adversely affect a substantial right of a party.” K-Mart Corp. v. Hardy, 735 So.2d 975, 983 (¶21) (Miss.1999) (citation omitted). “To apply the harmless[-]error analysis ... [the appellate court] must determine whether the weight of the evidence ... is sufficient to outweigh the harm done by allowing admission of [the] evidence.” Fuselier v. State, 702 So.2d 388, 391 (¶ 9) (Miss.1997). The record reflects that Green performed the survey on the property at issue, and provided testimony explaining the location of the ravine and Dedicated Road easement on the survey plat. We find that such testimony providing a description of the property at issue failed to “result in prejudice or harm or adversely affect a substantial right” of the Haiks. See K-Mart Corp., 735 So.2d at 983 (¶ 21). We find no abuse of discretion in the chancellor’s admission of Edwards’s, Green’s, or Huber’s testimony.
*782 (4) Whether the chancellor erred in granting the Gammills and Balls’ request to relocate the Service Road.
¶ 48. The Haiks assert that in addition to committing error in determining that the Gammills and Balls possess an easement over the Service Road, the chancellor erred in concluding that the Gammills and Balls have the right to move the Service Road to a location of their choice. However, the Haiks allege that the record contains insufficient evidence to show that the Service Road was moved.
¶ 44. In contrast to the Haiks’ argument, the Gammills and Balls explain that they seek to reestablish the Service Road to its original location, where it had been located for 42 years. Gammill testified regarding the location of the original road, as shown in one of the photographs in Exhibit DG-007. The Gammills and Balls also submit that the location of the original road was reflected in Exhibit H-28, the September 1971 survey of the property.
¶ 45. After hearing the testimony from the witnesses and examining the evidence, the chancellor found that “[t]he Service Road had been moved in one spot, which allowed it to be further away from the house yard of the Haiks’ house.” The chancellor then ordered that the “Service Road is to be placed back in it’s original location. It is to be moved from the relocation area done by the Haiks and placed back in the original Service Road bed.” In keeping with our standard of review, we cannot say that the chancellor’s finding clearly was erroneous. Sanderson, 824 So.2d at 625 (¶ 8).
(5) Cross-Appeal: Whether the chancellor erred in finding that the Dedicated Road Easement had not been abandoned.
¶ 46. In their cross-appeal, the Gam-mills and Balls argue that the chancellor erred in finding that the Dedicated Road easement had not been abandoned.[8] The Gammills and Balls submit that the Haiks failed to provide testimony at trial to negate the following facts in support of a finding that the Dedicated Road easement had been abandoned: no roadway or right-of-way had ever been built on the Dedicated Road easement, and the Dedicated Road easement had never been used for access to the Gammills and Balls’ properties. The Gammills and Balls therefore argue that the easement had been abandoned. The Gammills and Balls further submit that they offered testimony showing that fencing, trees, and a bayou crossed the Dedicated Road easement and blocked access to it.
¶ 47. In Bivens v. Mobley, 724 So.2d 458, 461-62 (¶¶ 11-13) (Miss.Ct.App.1998), this Court recognized that abandonment is a question of fact, which requires non-use for an extended period of time as well as the intent to abandon. Additionally, evidence of abandonment must be “full and clear.... [TJhere must be some clear and unmistakable affirmative act or series of acts indicating a purpose to repudiate ownership.” Columbus & Greenville Ry. Co. v. Dunn, 184 Miss. 706, 720, 185 So. 583, 586 (1939). “[P]rotracted non-use for an extended period of time” manifests a “ ‘presumption of abandonment.’ ” Bivens, 724 So.2d at 461 (¶ 11) (quoting R & S *783 Dev., Inc. v. Wilson, 534 So.2d 1008, 1010 (Miss.1988)). The presumption is stronger if an intent to abandon can be shown. Id. (citation omitted).
¶ 48. Here, the chancellor stated in his judgment that he:
has heard no testimony concerning the intent of any of the parties to abandon their rights to the Dedicated Road [easement]. It was apparent when the court viewed the property ... Harper[ ] has erected an iron gate and expensive fencing and landscaping over and across the Dedicated Road [easement;] the court determined these acts of [Harper were] done at his own peril.
The chancellor, therefore, held that the parties had not abandoned the Dedicated Road easement.
¶ 49. Because we find that there was substantial evidence to uphold the chancellor’s finding that the parties did not abandon the Dedicated Road easement, we find no error as to this issue. See Stone v. Lea Brent Family Invs., L.P., 998 So.2d 448, 456 (¶¶ 32-35) (Miss.Ct.App.2008). Because we also find substantial evidence in the record supporting the judgment, we affirm.
¶ 50. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT AND CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS/CROSS-APPELLEES AND ONE-HALF TO THE APPELLEES/CROSS-APPEL-LANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. We refer to these individuals collectively as "the Gammills and Balls.” This collective designation also includes the estate of Reuben Harper, whom the chancellor ordered joined as a defendant at a later point in the litigation.

. The record reflects the property was previously known as "Ravenna.”

. The minutes of this meeting shed light on why the Dedicated Road was never built.

. Dean conveyed his tract to Harper, who later conveyed the tract to the Gammills.

: During the course of the litigation, the chancellor discovered that Harper had constructed a fence partially on the Dedicated Road easement; as a result, the chancellor ordered that Harper be joined as a defendant.

. In Quin, 183 Miss. at 375, 183 So. at 701, the supreme court held:
When the owner of lands, abutting upon a public highway, conveys to another all that portion of said lands which so abut, and retains the interior portion, from which interior lands he would have no way to reach a public highway except permissively over the lands of strangers, the law reserves to the grantor, as an appurtenance to the reserved lands, the easement of a right[-]of[-]way over the exterior lands thus conveyed, and from the interior lands to the public highway first aforesaid; and this right of easement continues so long as the necessity therefor continues, which is to say, so long as the owner or owners of the interior lands to reach a public highway[ ] would have to resort to the permissive use of a roadway other than the reserved easement.

. As explained previously, Edwards provided testimony stating that the cost of building a road over the Dedicated Road easement could run in excess of $98,000. Edwards opined that had a road been built in 2001, the cost of construction would have been substantially less. Green, a registered land surveyor, provided testimony on the issue of the cost to construct alternate access to the properties at issue. Green’s testimony was offered to bolster Edwards's contention that the cost of the alterative access over the Dedicated Road easement would be necessarily increased since the Dedicated Road easement crossed a gully or ravine. Huber testified as an expert relating to the cost to remove certain improvements from the Dedicated Road easement.

. As previously explained, this Dedicated Road easement was conveyed in 1967 and provided a potential alternate access to the Gammills and Balls’ properties by providing access along South Union Street. The chancellor found that the instrument conveying the Dedicated Road easement failed to provide who was to build the road or when the road was to be built.